## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **PAUL WIECHMANN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Case No. CIV-23-54-SM** |
| **KILOLO KIJAKAZI,** ) | |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Paul Wiechmann (Plaintiff) seeks judicial review of the Commissioner of Social Security's final decision that he was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(c). *See* Docs. 9, 10.

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings because the Administrative Law Judge (ALJ) improperly considered the persuasiveness of three medical opinions, causing a "flawed [residual functional capacity]"[1] (RFC) assessment. Doc. 11, at 3. After a careful review of the administrative record (AR), the

---

[1]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I.     Administrative determination.

### A.     Disability standard.

The Social Security Act defines a disabled individual as a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B.     Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to

---

[2]     Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

show Plaintiff retains the capacity to perform a different type of work and that

such a specific type of job exists in the national economy. *Id.*

### C.     Relevant findings.

#### 1.     Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory

analysis to decide whether Plaintiff was disabled during the relevant

timeframe. AR 39-49; *see* 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561

F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ

found Plaintiff:

(1)     had not engaged in substantial gainful activity since March 8, 2021, the alleged onset date;

(2)     had the severe medically determinable impairments of degenerative disc disease, anxiety disorder, and autism spectrum disorder;

(3)     had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)     had the RFC to perform sedentary work with additional restrictions;

(5)     was unable to perform his past relevant work;

(6)     could perform jobs that exist in significant numbers in the national economy such as document preparer, ticket checker, addresser, and touch up screener; and so,

(7)     had not been under a disability since March 8, 2021.

*See* AR 18-31.

## 2.   Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-5, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.   Judicial review of the Commissioner's final decision.

### A.   Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052.

This Court "consider[s] whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability

4

cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax*, 489 F.3d at 1084 (internal quotation marks omitted). Thus, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.*

"[T]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). But the failure to apply the proper legal standard requires reversal only where the error was harmful. *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (placing the burden to show harmful error on the party challenging an agency's determination).

## B.   The ALJ's consideration of the medical opinions.

Plaintiff argues "[t]he ALJ improperly considered the persuasiveness of Dr. [William] Wilson['s] and Licensed Counselor and Social Worker [Lenore] Arlee's medical opinions resulting in a flawed RFC." Doc. 11, at 3. Arguing that the ALJ's finding these opinions to be "somewhat persuasive," Plaintiff maintains the ALJ omitted some limitations from her RFC assessment. *See id.*

### 1.     The ALJ's consideration of medical opinions.

The ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Rather, the ALJ evaluates the persuasiveness of medical opinions by the claimant's physician using five factors, the most important of which are supportability and consistency. *Id.* § 416.920c(a); *see also Zhu v. Comm'r*, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021).

> "Supportability" examines how closely connected a medical opinion is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." "Consistency," on the other hand, compares a medical opinion to the evidence: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."

*Zhu*, 2021 WL 2794533, at *6 (citations omitted).

### 2.     The ALJ's consideration of the medical opinions in the record.

The state agency medical consultants each opined Plaintiff could perform the full range of medium exertion work. AR 27. The ALJ found these to be "only somewhat consistent and somewhat persuasive." *Id.* The ALJ reduced

Plaintiff's exertion level to sedentary with additional postural restrictions, based on the hearing evidence and testimony. *Id.*

The state agency psychological consultants each found Plaintiff to have a mild limitation in the ability to understand, remember or apply information; a moderate limitation in the ability to interact with others; a moderate limitation in the ability to concentrate, persist or maintain pace; and a mild limitation in the ability to adapt or manage oneself. *Id.* One consultant, Dr. Gary Lindsay, further opined that Plaintiff

> would retain sufficient concentration, memory, and general cognitive abilities to understand, remember, carry out simple and detailed tasks involving objects and data with routine supervision and the capacity for concentration, persistence, and pace for 1-4 step instructions for 2 hour periods over the course of a normal 8 hour day.

*Id.* The ALJ found both opinions to be consistent and persuasive, and that of Dr. Lindsay to be more persuasive, given its recency. *Id.* She noted their consistency with the record and noted that they were based on a review of much of the medical evidence and provided specific relevant evidence to support their conclusions. *Id.*

The ALJ turned next to Dr. Richard H. Swink's opinion. *Id.* at 28. Dr. Swink was not a treating physician and examined Plaintiff, although the ALJ noted the reason for the exam was unclear. *Id.* Dr. Swink noted Plaintiff's

marked limitations in carrying out simple instructions and complex instructions and upon his ability to make judgments on complex work-related decisions. Dr. Swink noted a mild limitation in understanding and remembering complex instructions: "He has chronic mental disorders which lead to decompensations, panic and inability to relate effectively to others or any work situations." *Id.* at 1110. Dr. Swink also found marked limitations in Plaintiff's ability to interact appropriately with the public, supervisors, and co-workers, and to respond appropriately to usual work situations and changes in a routine work setting. *Id.* at 1111. He identified "chronic conditions: ASD, social anxiety, and panic." *Id.* He stated that "[t]hese mental conditions are pervasive, life long and not predicted to improve significantly." *Id.* He also referred to a Nov. 18, 2021 "eval report" that does not appear in the record. He noted these limitations were present since early childhood. *Id.*

The ALJ found Dr. Swink's opinion not persuasive and not entirely consistent with the record. *Id.* at 28. For example, the marked limitations Dr. Swink found conflict with Plaintiff's activities of daily living, which include self-care, preparing meals, and playing video games. *Id.* As to social interaction limitations, the ALJ noted Plaintiff has been described as cooperative with normal behavior and a full range of affect. *Id.* The ALJ noted Plaintiff's consistently intact mental status examinations, including thought process,

thought content, attention, and concentration. *Id.* And she found the state agency providers' opinions more persuasive. *Id.*

LCSW Arlee noted that no impairment affected Plaintiff's ability to understand, remember and carry out instructions. AR 752. She then stated, "Paul is intelligent, understands commands but has severe mental health symptoms associated with anxiety and depression." *Id.*

As to his ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work-setting, LCSW Arlee checked a moderate impairment as to each. *Id.* at 753. She stated, "Paul has extreme and severe anxiety, panic attacks, and sleep difficulties. He has problems with excessive worry, ability to enjoy activities, loss of appetite and avoidance." *Id.*

Dr. Wilson opined, "Paul is highly intelligent and would have no problem understanding, remembering, or carrying-out instructions." *Id.* at 756. As to his ability to interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work-setting, Dr. Wilson checked a moderate impairment as to each. *Id.* at 757. He also stated, "Paul has intermittent moderate to severe anxiety with occasional significant pani[ic] attacks, which when they occur, would greatly negatively affect his occupational functioning at the time. Paul also has Autism Spectrum Disorder,

which can negatively impact his social cue recognition and social/interpersonal comm[unication] skills." *Id.*

As to these opinions, the ALJ found:

> The medical opinions of Dr. Wilson and Lenore Arlee, LCSW, have also been considered and found to *be more consistent with the record and somewhat more persuasive in that they largely key on the claimant's social difficulties, which the undersigned acknowledges*. Nonetheless, the undersigned finds the mental residual functional capacity above accounts for the moderate limitations they outline in their opinions, and that no further limitation is supported by the record. Indeed, the recent records, as outlined have continued to document intact mental status examinations, and similarly show the lack of any recent panic attacks. While Ms. Arlee states the claimant's anxiety prevents him from sleep, the most recent records dispute this, with the claimant himself denying the severity of such symptomology.

AR 28 (emphasis added) (citation omitted).

### 3. Plaintiff's challenge to the ALJ's RFC assessment.

Plaintiff objects to the ALJ's omission of certain limitations and restrictions in the RFC assessment and her failure to explain what portions of the opinions were persuasive while others were not. Doc. 11, at 8. In doing so, he backdoors a challenge to the ALJ's discounting of Dr. Swink's opinion. *Id.* at 10-11 ("The ALJ's reasons for discounting the Swink opinion were erroneous."). When reviewed in context, substantial evidence supports the ALJ's RFC assessment.

To start, when the ALJ stated Dr. Wilson's and LCSW Arlee's opinions were "somewhat more persuasive," she meant more persuasive than Dr. Swink's opinion, which she discounted as "not persuasive" in the preceding paragraph. AR 28. The ALJ did not need to rehash why she found Dr. Swink's opinion not persuasive, which she explained in the preceding paragraph. *Id.* And the ALJ need not explain what portions of Dr. Wilson's and LCSW Arlee's opinion were not persuasive—she supported why she found the state agency psychological consultants' opinions persuasive. *Id.* at 27. She agreed with those opinions' moderate limitations as to Plaintiff's mental functioning and included such limitations in the RFC assessment. *Id.* at 21.

Plaintiff next contends she "ha[s] no guidance from the ALJ as to why she believed [Plaintiff] could maintain employment, nor a discussion of the impact of stress and anxiety on his ability to perform lasting work, especially when, at best, he only ever had held a sheltered part-time job in conjunction with pursuit of his Master's degree." Doc. 11, at 12. Plaintiff received a Bachelor's degree in 2014 and a Master's degree in 2017 and worked as a part-time research assistant in 2019 and part of 2020. AR at 22, 46-48.

The ALJ discounted Plaintiff's subjective statements about the intensity, persistence and limiting effects of his symptoms. *Id.* at 23, 25. Plaintiff's application listed several medical conditions and related symptoms, including

11

anxiety disorder, depression, and panic attacks. *Id.* at 22. But the ALJ found that despite his mental health diagnoses and treatment, he has had no emergency or inpatient treatment. She acknowledged his complaints of anxiety, but also his contemporaneous generally intact mental health examinations, with alert and cooperative behavior, normal grooming and psychomotor kinetics, normal speech, and a thought process that was linear, logical, and goal directed. *Id.* at 25. She observed that the medical evidence did not document symptoms and related limitations as severe as those Plaintiff alleged. *Id.* at 23.

For example, she noted that an August 2020 examination revealed Plaintiff "had a normal appearance and alert, cooperative behavior," with speech that was "normal in rate, production and prosody" and thought process that was "linear, logical and goal-directed." *Id.* He "denied auditory or visual hallucinations," had "normal attention and concentration," and was "fully oriented," with "grossly intact" recent and remote memory. *Id.* At a later psychiatric evaluation in February 2022, Plaintiff reported "increased anxiety due to sleep issues" but "denied any uncontrolled depression or consistent anhedonia." *Id.* at 24. His behavior was "alert" and "cooperative," and his grooming and psychomotor kinetics were normal. *Id.* His speech "was of normal rate, production, and prosody," and his thought process was again found to be

"linear, logical, and goal directed." *Id.* His attention and concentration were again found to be normal, his remote and recent memory grossly intact, affect full of range, and mood congruent. *Id.* His language was found to be "appropriately conversant," and his insight and judgment fair. *Id.*

The ALJ noted his video game and computer programming and theory interests, and noted these would likely require intact attention and concentration. *Id.* at 26. She listed some activities of daily living reported by a third party, such as preparing simple meals, performing personal care, shopping online, doing household chores, handling a savings account, driving, going out alone, walking a mile, and handling a savings account. *Id.*

The ALJ neither "play[ed] doctor" nor "cherry-picked" Dr. Wilson's and LCSW Arlee's opinions. Doc. 11, at 8. The ALJ found the state agency consultants' opinions were consistent, persuasive, and supported by medical evidence. The ALJ restricted Plaintiff to sedentary work and included additional restrictions (unskilled and non-socially-intensive occupations). Substantial evidence supports the ALJ's RFC assessment.

Finally, Plaintiff maintains the ALJ "failed to ask the [vocational expert] a question, specifically and accurately relating all of [Plaintiff's] impairments." Doc. 11, at 12. He suggests that the ALJ did not consider the impact of

workplace stress or anxiety and its impact on Plaintiff's "ability to perform lasting work." *Id.* at 11-12.

"[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990). In posing a hypothetical question to the vocational expert, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Additionally, the hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

Here, the ALJ's questioning mirrored Plaintiff's RFC assessment.[3] By including those limitations, the ALJ adequately accounted for Plaintiff's anxiety and other mental impairments. *See Qualls v. Apfel*, 206 F.3d 1368,

---

[3]     In her hypothetical question to the vocational expert, the ALJ described a person who is "able to learn, understand, remember, and perform simple and some detailed one to four step tasks involving objects and data with routine supervision." The ALJ then described, "Incidental public contact. No customer service work. They are able to interact appropriately with supervisors and coworkers for superficial work purposes. And they're able to adapt to work situations." AR 65.

1373 (10th Cir. 2000) (holding that hypothetical question "provided a proper basis for the ALJ's disability decision" when it "included all the limitations the ALJ ultimately included in his RFC assessment"). Therefore, this Court finds the ALJ did not err in the questioning of the vocational expert.[4]

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 1st day of August, 2023.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff's hearing counsel followed up with hypotheticals that excluded any fast-paced work (to which the vocational expert responded that none of the identified jobs include fast-paced work) but included producing less than the average co-employee (to which the vocational expert responded that falling behind by fifteen-to-twenty percent would mean the worker could not sustain employment); needing unscheduled fifteen- to twenty-minute breaks (to which the vocational expert responded that this would not be tolerated); and also included a marked limitation in the ability to carry out simple instructions and the ability to make judgments on simple, work-related decisions (to which the vocational expert responded that this would result in an inability to perform the identified jobs), and a marked inability to respond appropriately to work situations and changes in a routine work setting (to which the vocational expert responded that, although this would not typically result in a lot of change in unskilled situations, the employee "would have problems on the job"). AR 67-68.